[Cite as *State v. Bryan*, 2011-Ohio-4619.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | Case No. 2011CA00054 |
| HEATHER R. BRYAN | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No. 2010CR1361

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 12, 2011

APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN D. FERRERO,
PROSECUTING ATTORNEY,
STARK COUNTY, OHIO

BY: KATHLEEN O. TATARSKY
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702-1413

WAYNE E. GRAHAM, JR.
4450 Belden Village St., N.W.
Suite 703
Canton, Ohio 44718

*Hoffman, J.*

{¶1} Defendant-appellant Heather R. Bryan appeals her conviction and sentence entered by the Stark County Court of Common Pleas, on one count of endangering children, in violation of R.C. 2919.22(B)(1)(E)(2)(d), a felony of the second degree, following a jury trial. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} On September 17, 2010, the Stark County Grand Jury indicted Appellant on the aforementioned charge. Appellant appeared before the trial court for arraignment and entered a plea of not guilty to the Indictment. The matter proceeded to jury trial on January 10, 2011.

{¶3} Dr. Jana Schweikert, a pediatrician with Stark County Pediatrics in Alliance Ohio, testified Appellant presented her infant son, S.G., for a routine checkup on June 1, 2010. Dr. Schweikert learned the child had been born approximately two months premature, and had experienced a number of medical issues following his birth, including possible infections, breathing difficulties or apnea, and possible jaundice. According to Appellant, S.G.'s apnea was still a problem, and he was on a machine to monitor the condition. Dr. Schweikert's physical examination of S.G.'s outer body revealed no signs of trauma. A follow-up visit was scheduled for the following week.

{¶4} On June 8, 2010, Appellant again presented S.G. to Dr. Schweikert for the follow-up visit. At that time, the doctor noted a bruise on S.G.'s abdomen. Appellant explained S.G. had slipped out of his father's grasp while being bathed, and had struck his stomach on the water faucet. Dr. Schweikert instructed Appellant to take S.G. across the street to Alliance Community Hospital for x-rays.

{¶5} Matthew Gilbert, an emergency room nurse at Alliance Community Hospital, testified Appellant presented S.G. at the emergency room at approximately 6:00pm on June 8, 2010. The attending physician, Dr. Catalano, ordered a complete body x-ray. Gilbert stated the x-rays revealed either a fractured skull or a suspected fractured skull. Dr. Catalano informed Gilbert S.G. was to be transferred to Akron Children's Hospital for further assessment.

{¶6} Dr. Daryl Steiner, the Medical Director of the Care Center at Akron Children's Hospital, testified S.G. was in critical condition when the infant was brought to the hospital, and was immediately admitted to the intensive care unit. Dr. Steiner ordered a skeletal survey, blood work, a CT scan of S.G.'s head, and an MRI of his brain. The tests and x-rays indicated multiple, serious internal injuries, which included seven fractured ribs. Dr. Steiner determined two of the seven fractures had occurred approximately two weeks earlier while the others had occurred within the last seven days. S.G. also suffered a skull fracture, which Dr. Steiner explained was typically caused by a child falling ten to fifteen feet. As a result of the skull fracture, S.G. suffered permanent and irreversible brain injury. The extent of necrosis, dead tissue, on S.G.'s brain indicated the injury had not taken place within the past few days.

{¶7} Dr. Steiner testified rib fractures are highly specific for abusive injuries, and such do not occur with usual household events. Dr. Steiner stated, "Just about the only way that can happen is if a child is picked up and, and his chest is manually squeezed with, with a violent force to cause the fractures to occur." Tr. Vol.1 at 148. With respect to S.G.'s skull fracture, Dr. Steiner stated he could not make a diagnosis the baby was shaken, but indicated S.G. sustained a forceful impact.

{¶8} Chelsea Eberling, a social worker with the Stark County Department of Job and Family Services, became involved in the matter after the agency received a report of possible abuse. Eberling contacted Detective Joseph Weyer of the Alliance City Police Department, and advised him of the allegations. Eberling also contacted Dr. Steiner to review his findings. The following day, June 9, 2010, Eberling interviewed Appellant and Eric Gooding, S.G.'s father, at Akron Children's Hospital. Subsequently, on June 16, 2010, Eberling and Detective Weyer interviewed Appellant at her place of employment. Following the conversation, the agency took the child into custody. Eberling recalled, during the interview Appellant acknowledged she had probably thrown S.G. down a little too hard into his bassinette. Appellant explained S.G. was constantly crying. When she could not get S.G. to stop crying she became more and more frustrated.

{¶9} Detective Weyer testified he received a call on June 9, 2010, from Eberling regarding S.G. Sometime around 3:00 or 4:00 pm that day, Detective Weyer spoke with Gooding. The Detective met Gooding at the apartment he shared with Appellant. Weyer took a written statement from Gooding and photographed areas of the apartment, including the bathtub and the faucet. The detective interviewed Appellant at her place of employment on June 16, 2010. During the interview, Appellant admitted she had probably thrown S.G. down a little too hard or dropped him on the bed or into his bassinette. Appellant gestured as if throwing S.G. down when she explained to Detective Weyer what had happened. Appellant indicated she had probably done this four or five times over the last few weeks.

**{¶10}** After hearing all the evidence and deliberating, the jury found Appellant guilty of child endangering. The trial court ordered a pre-sentence investigation. Appellant appeared for sentencing on February 23, 2011, at which time the trial court sentenced her to a term of imprisonment of four years.

**{¶11}** It is from this conviction and sentence Appellant appeals, raising as her sole assignment of error:

**{¶12}** "I. APPELLANT'S CONVICTION FOR CHILD ENDANGERING IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶13}** Our standard of reviewing a claim a verdict was not supported by sufficient evidence is to examine the evidence presented at trial to determine whether the evidence, if believed, would convince the average mind of the accused's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt, *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by State constitutional amendment on other grounds as stated in *State v. Smith* (1997), 80 Ohio St.3d 89, 684 N.E.2d 668.

**{¶14}** The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight. Sufficiency of the evidence is a question for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury.

{¶15} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St.3d 387, 678 N.E.2d 541, 1997–Ohio–52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997–Ohio–355, 684 N.E.2d 668. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins,* supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

{¶16} We first address Appellant's sufficiency of the evidence challenge.

{¶17} Appellant was convicted of endangering children, in violation of R.C. 2919.22(B)(1)(E)(2)(d), which provides:

{¶18} "(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

**{¶19}** "(1) Abuse the child;

**{¶20}** "* * *

**{¶21}** "(E)(1) Whoever violates this section is guilty of endangering children.

**{¶22}** "* * *

**{¶23}** "(2) If the offender violates division (A) or (B)(1) of this section, endangering children is one of the following, and, in the circumstances described in division (E)(2)(e) of this section, that division applies:

**{¶24}** "* * *

**{¶25}** "(d) If the violation is a violation of division (B)(1) of this section and results in serious physical harm to the child involved, a felony of the second degree."

**{¶26}** Appellant contends the State failed to prove the culpable mental state of "reckless". We disagree.

**{¶27}** R.C. 2901.22 defines "reckless" as follows:

**{¶28}** "(C) A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

**{¶29}** Dr. Steiner testified rib fractures in infants "are highly specific for abusive injury", adding "rib fractures do not occur with usual household events . . . just about the only way that can happen is if a child is picked up and, and his chest is manually squeezed with, with a violent force to cause the fractures to occur." Tr. Vol. I at 148, 151. Dr. Steiner opined a person who caused a rib fracture in an infant would know

he/she was inflicting that kind of injury. S.G. had seven rib fractures. With respect to S.G.'s skull fracture, Dr. Steiner explained S.G.'s parietal bone was fractured, and such a fracture requires a significant impact to the skull. Id. at 154. Dr. Steiner opined a person who caused a skull fracture clearly recognized the forcefulness of the act.

**{¶30}** We find Dr. Steiner's testimony was sufficient to establish the culpable mental state of "reckless". Accordingly, we find Appellant's conviction was not based upon insufficient evidence.

**{¶31}** We now turn to Appellant's manifest weight of the evidence challenge. Upon review of the record including a reading of the entire transcript, we find Appellant's conviction was not against the manifest weight of the evidence. Appellant admitted she "had probably thrown the baby down a little too hard" onto the bed or into his bassinette. Tr. Vol. II at 37. Appellant stated she had thrown S.G. in this manner four or five times. At trial, Appellant testified she regretted ever putting S.G. down too hard. Id. at 138. The evidence established the injuries S.G. suffered could not have occurred as the result of a usual household event. The jury was free to accept or reject any or all of the testimony of the witnesses. The jury obviously believed Appellant threw S.G. down with sufficient force and violence as to cause his severe and permanent injuries.

**{¶32}** Appellant's sole assignment of error is overruled.

**{¶33}** The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Edwards, J. concur

_____
HON. WILLIAM B. HOFFMAN


_____
HON. W. SCOTT GWIN


_____
HON. JULIE A. EDWARDS

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO      :
            :
  Plaintiff-Appellee    :
            :
-vs-          :    JUDGMENT ENTRY
            :
HEATHER R. BRYAN    :
            :
  Defendant-Appellant   :    Case No. 2011CA00054

For the reasons stated in our accompanying Opinion, The judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____
HON. WILLIAM B. HOFFMAN

_____
HON. W. SCOTT GWIN

_____
HON. JULIE A. EDWARDS